IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BAYOU BEND HOMES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-1544 |
| | § | |
| SCOTTSDALE INSURANCE COMPANY, | § | |
| STEADFAST INSURANCE COMPANY, | § | |
| MID-CONTINENT CASUALTY CO., | § | |
| and MT. HAWLEY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Pending before the court[1] is Defendant Mt. Hawley Insurance Company's ("Mt. Hawley's") Motion for Summary Judgment, Docket Entry No. 25.  The court has considered the motion, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Mt. Hawley's motion.

### I.  Case Background

Bayou Bend Homes, Inc., ("Bayou Bend"), a home builder and contractor, brought this insurance action in state court against four liability insurers for defense and indemnity in a number of lawsuits filed by purchasers of homes Bayou Bend built.  Bayou Bend also raised claims of fraud and bad faith.  After the original defendants removed the case, Bayou Bend moved for dismissal of three of the four insurers, leaving Mt. Hawley as the only

---

[1]   The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 15.

defendant.  Bayou Bend further clarified that it asserts no fraud claim against Mt. Hawley.

**The Mt. Hawley Policy**

Bayou Bend purchased a commercial general liability ("CGL") insurance policy from Mt. Hawley to cover the time period June 16, 1996, to June 16, 1997.[2]  In exchange for the payment of the premium, Mt. Hawley agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. . . . [and] to defend any 'suit' seeking those damages."[3]  The insurance applied to bodily injury or property damage if:  "(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) The 'bodily injury' or 'property damage' occurs during the policy period"[4]

The policy defined "occurrence" as "as accident, including continuous or repeated exposure to substantially the same general harmful conditions" and defined "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property."[5]  Excluded from coverage was property damage to

---

[2]    See Appendix in Support of Mt. Hawley's Motion for Summary Judgment ("Appendix"), Docket Entry No. 26, Ex. A, insurance policy number MGL 116501.

[3]    Id.

[4]    Id.

[5]    Id.

Bayou Bend's work[6] "arising out of it or any part of it and included in the 'products-completed operations hazard.'"[7]  The "products-completed operations hazard" included property damage occurring away from Bayou Bend's premises and arising out of Bayou Bend's work except damage to products still in Bayou Bend's possession and to work not yet completed or abandoned.[8]  The policy also excluded coverage for property damage or other injury "due to the rendering or failure to render any professional service" relating to construction.[9]

**The Underlying Lawsuit**

In July 1997, Robert A. Blodgett and Marilyn Blodgett ("the Blodgetts") purchased a house built by Bayou Bend.[10]  Nearly seven years later, the Blodgetts sued Farmers Insurance Exchange ("Farmers"), the carrier on their homeowner's insurance policy, for damages related to Farmers' refusal to provide coverage for mold

---

[6]     The policy used the term "your work," which it defined as work or operations performed by Bayou Bend or on Bayou Bend's behalf and "[m]aterials, parts or equipment furnished in connection with such work or operations."  Id. It included warranties or representations made regarding the fitness, quality, performance or use of the work and the failure to provide warnings or instructions.  Id.

[7]     Id.

[8]     Id.

[9]     Id.

[10]    See Appendix, Docket Entry No. 26, Ex. D, Motion for Summary Judgment in the Blodgett litigation (stating that the Blodgetts purchased the house on or about July 22, 1997 and citing an earnest money contract that is not included in the record before this court).

damage in their house.[11]  In their original petition, the Blodgetts averred that, in June 2001, they "noticed the growth of mold and mildew in the House."[12]  They claimed that the house was in "good condition" immediately prior to the "initial growth of mold and mildew."[13]

The Blodgetts complained that, although they promptly reported a claim to Farmers, Farmers failed to test the house for the presence of mold, failed to perform a proper investigation, failed to provide coverage, and deleted coverage for mold damage from the policy upon renewal.[14]  The original petition raised the following claims: breach of contract, fraud, negligent misrepresentation, and violations of the Insurance Code and Texas Deceptive Trade Practices Act ("DTPA").[15]

In August 2004, Farmers impleaded Bayou Bend, asserting that "the mold and water damage at the Blodgetts' residence was caused by the negligent construction of the Blodgetts' house" by Bayou Bend.[16]  Farmers asserted "a claim for contribution and/or indemnity" against Bayou Bend, seeking recovery of any damages for

---

[11]   See Appendix, Docket Entry No. 26, Ex. C, Blodgetts' Original Petition.

[12]   Id.

[13]   Id.

[14]   Id.

[15]   Id.

[16]   See Appendix, Docket Entry No. 26, Ex. B, Farmers' Third-Party Petition.

which Farmers became liable to the Blodgetts, "including actual damages to their property, attorneys fees, costs and penalties."[17]

Bayou Bend informed Mt. Hawley that Farmers had filed a third-party petition against Bayou Bend in the Blodgett suit.[18]   In a letter dated November 18, 2004, Mt. Hawley advised Bayou Bend "that the claim appeared to more appropriately involve your Commercial General Liability policies for the years 1999 forward, rather than Mt. Hawley's policy effective June 16, 1996, to June 16, 1997."[19] Mt. Hawley denied that it had a duty to defend or to indemnify Bayou Bend because the allegations in the Blodgetts' original petition "expressly state[d] that the Blodgetts suffered no damage until the year 2001, well after the expiration of Mt. Hawley's policy."[20]

On March 16, 2005, Bayou Bend filed this action. Approximately one month later, the Blodgetts filed a supplemental second amended petition in the underlying lawsuit, pleading direct causes of action against Bayou Bend, in addition to the claims against Farmers.[21]   Therein, the Blodgetts claimed that Bayou Bend

---

[17]   Id.

[18]   See Appendix, Docket Entry No. 26, Ex. E-1, letter from Mt. Hawley to Bayou Bend dated Nov. 18, 2004.

[19]   Id.

[20]   Id.

[21]   See Appendix, Docket Entry No. 26, Ex. G, Blodgetts' Supplemental Second Amended Original Petition.

constructed their house and that, "[a]fter moving into their home, the Blodgetts noticed some ingress of water into the House."[22]   The supplemental petition stated that the Blodgetts had contacted Bayou Bend more than once concerning the ingress of water around the windows and doors.[23]   Although Bayou Bend represented to the Blodgetts that the necessary repairs had been made, the supplemental petition explained, water continued to enter the house with increasing frequency and volume.[24]   The Blodgetts alleged, "Recently, large quantities of water have entered the House, resulting in structural damage and the growth of mold and mildew."[25]

Claiming that they had sustained and continued to sustain extensive property damage as a result of Bayou Bend's negligent construction, the Blodgetts sued Bayou Bend for negligence, gross negligence, res ipsa loquitur, breach of contract, violations of the Residential Construction Liability Act, breach of warranty, fraud, and negligent misrepresentation.[26]   The record lacks any indication whether the Blodgetts' claims against Bayou Bend were tendered to Mt. Hawley.

## II.  Summary Judgment Standard

---

[22]   Id.

[23]   Id.

[24]   Id.

[25]   Id.

[26]   Id.

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the legal basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992). When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir.

7

2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

### III.  Analysis

Mt. Hawley seeks summary judgment on all of Bayou Bend's claims, which include breach of contract for failure to defend and/or to indemnify and extra-contractual claims for bad faith. Mt. Hawley argues that it does not have a duty to defend and/or to indemnify Bayou Bend for the allegations in the underlying suit because:  1) the third-party petition alleged no bodily injury or property damage, but solely economic damages; 2) none of the petitions in the underlying suit allege damages that occurred during the relevant policy period; 3) the "products-completed operations hazard" exclusion precludes coverage; and 4) the "designated professional services" exclusion precludes coverage. Mt. Hawley further contends that, in the absence of coverage, no extra-contractual claims survive, but, even if they did survive, Bayou Bend has no damages arising from the extra-contractual allegations.

Because the court agrees with Mt. Hawley that the underlying petitions fail to allege property damage occurring within the policy period, the court finds no coverage.  Absent coverage, Bayou Bend's extra-contractual claims also fail.  <u>Republic Ins. Co. v. Stoker</u>, 903 S.W.3d 338, 341 (Tex. 1995).  As that disposes of Bayou

8

Bend's entire case, the court need not address Mt. Hawley's remaining arguments.

This case is properly before the court on the basis of diversity jurisdiction. The parties agree that Texas law applies to their controversy. Absent any indication in the record that another state's law should apply, the court will apply Texas law.

Texas law is clear that an insurer's duty to defend and its duty to indemnify are separate duties, and an insurer may have a duty to defend even when it has no duty to indemnify. <u>Farmers Tex. County Mut. Ins. Co. v. Griffin</u>, 955 S.W.2d 81, 82 (Tex. 1997). That is to say, allegations raised against the insured may fit within the policy coverage and trigger a duty to defend even if the facts actually established in the underlying suit negate the insurer's duty to indemnify. <u>Id.</u>; <u>see also</u> <u>GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church</u>, No. 04-0692, ___ S.W.3d ___, 2006 WL 1791689, at *4 (Tex. June 30, 2006)(not released for publication). However, if the factual allegations in an underlying complaint fall outside the policy coverage, neither duty is triggered. <u>See</u> <u>Griffin</u>, 955 S.W.2d at 84.

When contemplating whether the underlying litigation triggers policy coverage, the court examines the factual allegations in the pleading and the language of the insurance policy. <u>See</u> <u>Lincoln Gen. Ins. Co. v. Reyna</u>, 401 F.3d 347, 350 (5th Cir. 2005)(applying Texas law); <u>Fielder Rd. Baptist Church</u>, 2006 WL 1791689, at **1, 2;

9

Griffin, 955 S.W.2d at 82.  Known as the "eight corners rule" or the "complaint allegation rule," this method requires that the court compare only the "four corners" of the pleading with the "four corners" of the policy.  Allstate Ins. Co. v. Disability Servs. of the Sw. Inc., 400 F.3d 260, 263 (5th Cir. 2005)(applying Texas law); see also Fielder Rd. Baptist Church, 2006 WL 1791689, at *2.

The burden of establishing a duty to defend falls first on the insured to demonstrate that the claims brought against it potentially state a cause of action that is covered by the policy. Reyna, 401 F.3d at 350.  When reviewing the policy terms, the court employs general rules of contract construction.  Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 740-41 (Tex. 1998).  Absent any ambiguity, the meaning imparted by the contract language can be decided as a matter of law.  Utica Nat'l Ins. Co. of Tex. v. Fidelity & Cas. Co. of N.Y., 812 S.W.2d 656, 661 (Tex. App.–Dallas 1991, writ denied).   If the insured demonstrates potential coverage, the insurer must show that the plain language of a policy exclusion disallows coverage as to all claims.  Reyna, 401 F.3d at 350.  Exclusions are strictly construed in favor of coverage. Disability Servs. of the Sw. Inc., 400 F.3d at 263.

The court is to focus on the factual allegations in the pleadings, not the legal theories being asserted.  Reyna, 401 F.3d at 350; Mid-Continent Cas. Co. v. Safe Tire Disposal Corp., 16

S.W.3d 418, 421 (Tex. App.–Waco 2000, pet. denied).  The insurer's duty depends, then, on whether the allegations in the underlying complaint, without regard to their veracity, would potentially state a cause of action that fits within the policy's coverage. See <u>Northfield Ins. Co. v. Loving Home Care, Inc.</u>, 363 F.3d 523, 528 (5th Cir. 2004)(applying Texas law); <u>Fielder Rd. Baptist Church</u>, 2006 WL 1791689, at *2; <u>King v. Dallas Fire Ins. Co.</u>, 85 S.W.3d 185, 191 (Tex. 2002).

"Courts may not, however, (1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." <u>Guaranty Nat'l Ins. Co. v. Azrock Indus.</u>, 211 F.3d 239, 243 (5th Cir. 2000)(applying Texas law); <u>see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.</u>, 939 S.W.2d 139, 142 (Tex. 1997).  An insurer has no legal obligation to defend a suit if the underlying petition does not allege facts that fit within the scope of coverage.  <u>King</u>, 85 S.W.3d at 187.  Even so, all doubts are resolved in favor of the duty to defend.  <u>Id.</u>

To date, the Texas Supreme Court has not recognized any exception to the eight corners rule.  As recently as June of this year, the court rejected the use of extrinsic evidence that is relevant both to coverage and to the merits in order to determine the existence of a duty to defend.  <u>Fielder Rd. Baptist Church</u>, 2006 WL 1791689, at *3.  In that case, the pleadings alleged that

11

a youth minister sexually assaulted the complaining party during
the insurance policy period and that the youth minister was
employed by the insured at the time.  Id. at *4.  The insurer asked
the court to consider extrinsic evidence that established that the
youth minister was not an employee of the insured during the period
alleged.  Id. at *2.

The court declined, explaining that the proposed extrinsic
evidence directly contradicted the allegation that the youth
minister was employed at the time, which was at least partly
related to the merits of the underlying petition.  Id. at *3.  The
court further stated, "Under the eight-corners rule, the
allegation's truth was not a matter for debate in a declaratory
judgment action between insurer and insured."  Id.  The court found
that the application of the eight-corners rule comported with the
insurer's commitment, in the policy, to defend allegations of
sexual misconduct, even if they were groundless.  Id. at *4.  If
the insurer knew that the allegations were false, the court
continued, it must use that information to defend the insured.  Id.

Although the Texas Supreme Court explicitly rejected the use
of extrinsic evidence that was relevant both to coverage and to the
merits of the underlying action, it did not rule on the validity of
a more narrow exception that would allow extrinsic evidence solely

on the issue of coverage.  See id. at **3, 4.[27]  In fact, the language of the opinion hints that the court views the more narrow exception favorably.  For example, the court specifically acknowledged that other courts recognized a narrow exception for extrinsic evidence that is relevant to the discrete issue of coverage and noted that the Fifth Circuit had opined that, were any exception to be recognized by the Texas high court, it would likely be such a narrow exception.  Id. at *3 (citing Loving Home Care, Inc., 363 F.3d at 531).

Moreover, the court distinguished, without overruling, an intermediate appellate decision that relied on an external stipulation to determine that the allegations in the pleadings did not state a potentially covered claim.  Id. at *3 (citing Int'l Servs. Ins. Co. v. Boll, 392 S.W.2d 158 (Tex. Civ. App.–Houston 1965, writ ref'd n.r.e.).  In Boll, the petition alleged that the insured's son was driving the insured's car when the accident occurred, and the policy excluded claims arising from accidents occurring while Roy Hamilton Boll, a son of the insured, was driving.  Boll, 392 S.W.2d at 160.  Although not clear in the petition, the parties stipulated that the insured's only son, Roy

---

[27]    A very recent Texas court of appeals decision took a similar approach. Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co., No. 14-05-00487-CV, ____ S.W.3d ____, 2006 WL 1892669, at **5-6 (Tex. App.–Houston [14th Dist.] July 6, 2006, no pet. h.)(rejecting a more permissive rule that would allow the consideration of extrinsic evidence whenever the evidence does not contradict the pleadings, but suggesting, without explicitly stating, that it would allow extrinsic evidence to establish fundamental coverage facts).

Hamilton Boll, was driving. Id. Based on that stipulation, the court found that the insurer had no duty to defend the insured. Id. at 161.

The case presently before this court is similar to Boll in that external undisputed information readily clarifies vague allegations in the pleadings. Farmers' third-party petition lacks any mention of the time period during which the property damage occurred. However, because the only relief that Farmers seeks is based entirely on the allegations of the Blodgetts in the same lawsuit, the court relies on the Blodgetts' petitions to fill in the temporal details. The Blodgetts alleged that water began to seep into their house *after* they moved in and that mold and mildew became noticeable to them in June 2001. The fact that the Blodgetts moved into the house in July 1997 is undisputed.[28] Thus, the pleadings in the underlying lawsuit allege that water seeped into the Blodgetts' house sometime after July 1997 and caused mold and mildew to develop at some point thereafter, ultimately manifesting in June 2001.

The particular coverage question in this case is whether the underlying petitions potentially allege that the property damage (mold and mildew and structural damage) occurred[29] within the policy

---

[28]     Mt. Hawley relies on Bayou Bend's representations to the underlying court to establish this fact.

[29]     The policy language clearly states that, to be covered, the property damage must occur during the policy period, without regard to when the "occurrence" that caused the damage occurred. The issue, then is not when the

14

coverage period (June 16, 1996, to June 16, 1997).  To answer this question, the court has reviewed numerous cases addressing when duty to defend coverage is triggered.

In 1994, the Texas Supreme Court noted "in passing" that courts across the nation had developed at least five tests for determining when coverage was triggered for "continuing occurrences." Am. Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 853 n.20 (Tex. 1994).  The tests identified by the court were:  1) pure or strict manifestation rule, deeming coverage triggered by actual discovery of the injury; 2) relaxed manifestation rule, deeming coverage triggered in first policy period during which discovery is possible; 3) exposure rule, deeming coverage triggered in any policy period when exposure to the cause occurred; 4) injury-in-fact rule, deeming coverage triggered in personal injury cases when the "body's defenses are 'overwhelmed;'" 5) multiple or triple-trigger approach, requiring coverage during period of continuing exposure and manifestation.  Id.; see also Pilgrim Enters., Inc. v. Md. Cas. Co., 24 S.W.3d 488, 495 (Tex. App.–Houston [1st Dist.] 2000, no pet.).  Acknowledging that the only Texas precedent at the time followed the pure manifestation

---

allegedly defective construction occurred, but when the property damage occurred. See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co., No. 14-05-00487-CV, ___ S.W.3d ___, 2006 WL 1892669, at *8 n.7 (Tex. App.–Houston [14th Dist.] July 6, 2006, no pet. h.)(not released for publication)(pointing out that CGL policies do not cover the cost to repair, replace, or remediate defective construction itself; rather, they only cover property damage occurring during the policy period).

rule, the court refused to select which test or to create a new test because the case before it did not require it to do so. Garcia, 876 S.W.2d at 853 n.20 (citing Dorchester Dev. Corp. v. Safeco Ins. Co., 737 S.W.2d 380, 383 (Tex. App.-Dallas 1987, no writ)).

As of the date of this opinion, the Texas Supreme Court still has not adopted a trigger test. See Pine Oak Builders, Inc., 2006 WL 1892669, at *7. Some disagreement remains among Texas courts of appeal on the issue. Compare Dorchester, 737 S.W.2d at 383 (applying the manifestation rule); Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co., 852 S.W.2d 252, 257 (Tex. App.-Dallas 1993, writ denied)(same); State Farm Mut. Auto. Ins. Co. v. Kelly, 945 S.W.2d 905, 910 (Tex. App.-Austin 1997, writ denied)(same) with Pilgrim Enters., Inc., 24 S.W.3d at 499 (applying the exposure rule).

Despite the unsettled state of Texas law, the Fifth Circuit has taken a definitive position on the issue. In Azrock Industries, the Fifth Circuit discussed the various trigger theories and concluded that, under Texas law, the manifestation theory applies to determine when coverage is triggered for property damage claims. Azrock Indus., 211 F.3d at 248; see also Snug Harbor, Ltd. v. Zurich Ins., 968 F.2d 538, 544 (5th Cir. 1992)(applying Texas law)(finding that the occurrence is when the damage is sustained); Am. Home Assur. Co. v. Unitramp Ltd., 146

16

F.3d 311, 313 (5th Cir. 1998)(applying Texas law)(noting that Texas courts have found that property damage occurs when the damage becomes manifest); <u>Mathew Heating & Air Conditioning LLC v. Liberty Mut. Fire Ins. Co.</u>, 384 F. Supp.2d 988, 994 (N.D. Tex. 2004)(applying Texas law)(holding that the manifestation trigger applies to property damage claims due to mold); <u>Great Am. Ins. Co. v. Calli Homes, Inc.</u>, 236 F. Supp.2d 693, 702-03 (S.D. Tex. 2002)(applying Texas law)(adopting the manifestation rule).

In the absence of guidance from the Texas Supreme Court, this court is bound by Fifth Circuit precedent to apply the manifestation rule. Under the facts alleged by the Blodgetts, the mold and mildew manifested in 2001, immediately prior to which time, the house was in "good condition."[30] The Blodgetts alleged no property damage that occurred during the policy period. Any arguments to the contrary are foreclosed by the Blodgetts' allegations, which explicitly state that the property damage occurred after their move-in date in July 1997.

Mt. Hawley has no duty to defend Bayou Bend in the Blodgett litigation because the allegations in that lawsuit do not give rise to the possibility of coverage. In this case, the same reasons apply to negate any duty to indemnify. See <u>Griffin</u>, 955 S.W.2d at 84. Bayou Bend's breach of contract claim must be dismissed. As

---

[30]    <u>See</u> Appendix, Docket Entry No. 26, Ex. C, Blodgetts' Original Petition.

noted above, Bayou Bend's bad faith claims cannot survive summary judgment upon a finding that the policy affords no coverage.  <u>See</u> <u>Stoker</u>, 903 S.W.3d at 341.

### IV.   Conclusion

Based on the foregoing, the court **GRANTS** Mt. Hawley's Motion for Summary Judgment as to all of Bayou Bend's claims.

**SIGNED** in Houston, Texas, this 18th day of July, 2006.


_____
Nancy K. Johnson
United States Magistrate Judge

18